Good morning, Your Honors. May it please the court. My name is Ethan Blevins, counsel for appellants. I'll plan to reserve about five minutes of my time for rebuttal this morning. Housing providers seek to access the same information that the city and governments and industries across this country routinely rely on in assessing risk and reliability. The Fair Chance Housing Ordinance cannot selectively deny housing providers access to public information or arbitrarily deny them the right to exclude. The city can achieve all of its interests without restricting these rights. I'll plan today to address three points. First, the Second, whether the inquiry provision survives intermediate scrutiny should this court decide that that's a proper standard to apply. And third, whether the adverse action provision survives rational basis review. On the first question, the Supreme Court and the Ninth Circuit are quite clear that commercial speech is speech that proposes a commercial transaction. And this case is very similar, I think, to this circuit's decision in imdb.com versus Becerra, which involved online profiles published by imdb.com that were used by employers to decide whether or not to extend an offer of hire. And in that case, this court said that just because the information might be used ultimately to engage or facilitate a commercial transaction did not encyclopedic information and not transactional. And we would submit that background checks are very much like an online profile. They provide information about an individual that may facilitate or help someone decide whether to enter into a commercial transaction. But that information itself is not a proposal to engage in commercial transaction. Counsel, I'm going to ask your friend this too. So under this ordinance, can somebody go to the King County Superior Court and say to the records custodian, please give me all records on my tenant application, John Smith, that reflect whether or not he's been convicted of assaulting his landlords? Is that prohibited or allowed? Our understanding is that is prohibited, in part because it's clear that the ordinance defines person very broadly and then says that no person may. But I'm using somebody who is the perspective landlord of a tenant applicant in my question. Yes, your honor. It's still the answer is the same. The information can't be inquired about. So regardless of who is making the inquiry or who is being inquired to the ordinance prohibits that. So I can inquire, for example, if in Washington State, like my state, if misdemeanor sexual assaults are on the registry, I can inquire about misdemeanor sexual assaults, but I couldn't inquire about convictions for selling heroin to tenants, children, or assaulting of every landlord. That is correct, your honor. And it's that distinction that we does not survive the arbitrariness standard that applies in that context under the due process. I'm referring here to your First Amendment issue. I think you have a much tougher mountain to climb under your due process. But my question is basically dealing with the First Amendment issue. Certainly. Yeah. So it is true that in individuals who are on a sex offender registry, this information can be requested. It's permissible to use it for legitimate business reason, but is not permissible regardless of the gravity of the offense to ask about other criminal history, whatever it may be. And this runs to why even under intermediate scrutiny, the Fair Chance Housing Ordinance is not narrowly tailored. When we're looking at narrow tailoring under the context of the commercial speech test, we look to whether the ordinance directly advances the government's interest and whether it is more extensive than necessary to satisfy that interest. And on the direct advancement prong of that test, the city certainly has an interest in, or I should say its primary interest is in regulating conduct. And the way to do that is to enforce a conduct prohibition, which it already has in place in the adverse action. But doesn't the city point out that it's real hard to prove why someone doesn't rent to someone that's a very tough mountain to climb, but by prohibiting any inquiry, they advance the goal of preventing discrimination? I don't think that that's a valid reason for restricting the speech, Your Honor, based on this court's press. Well, that may not be a valid reason for restricting the speech, but your argument was it doesn't advance the goal. Yes, Your Honor, but the Supreme Court and the circuit have been clear that the direct advancement prong asks whether it directly and materially advances the government's interest. And this is the burden carried by the city to show that this prophylactic of prohibiting the inquiry materially advances the interest above and beyond what the adverse action provision already deals with. And we can look to cases, for example, like the city of Redondo Beach case in the Ninth Circuit, where this court applied the commercial speech test to a restriction on street solicitation. And the court in that case said the way to deal with the problems that arise from street solicitation, such as traffic and congestion, is to enforce jaywalking laws and similar laws that prohibit the conduct or regulate the conduct, the underlying conduct. That's another question I'm asking. If I wasn't tying it to his criminal record, I could ask that question, right? Based on how criminal background is defined in this ordinance, I think. So I could ask him if he supports selling heroin to children. I just couldn't ask him if he's been convicted of selling heroin to children. That is correct, Your Honor. And we would submit that for the landlord's situation, that latter question is the more relevant one to their interests in providing a safe housing community. And even if the court decides that this ordinance is directly advanced by the inquiry provision, then we would still look to whether this is more extensive than necessary to fulfill government's interests. And the question there largely is one of whether there are readily available alternatives that the city has seriously considered. And that the inquiry provision really is a last resort option to fulfilling government's interests. And the city simply hasn't carried that burden. We've already discussed the existence of the adverse action provision, which we would submit is itself available, less restrictive alternative. There's also in the record, submitted by the city's own housing affordability and livability agenda, the King County Landlord Liaison Project, which provides support services to landlords who agree to rent to homeless individuals. The city hasn't even considered whether a similar program might be used to encourage landlords and help them should they decide to rent to individuals with a criminal history. Your view also is the city could limit the crimes you couldn't inquire about to those that bore no relation to landlord or tenant safety, right? That's correct, Your Honor. And I think that is reflected in the record that the city itself relied on. A landlord survey, for example, back in the 1990s that showed that landlords were, by and large, very willing to rent to individuals with criminal history that did not bear on safety in the community, for example, or the treatment of the property. And so drug offenses, for example, landlords were overwhelmingly willing to ignore in determining whether or not to rent to an individual with a criminal history. But there are other avenues by which the city can fulfill all of these interests. It can expand public housing, which under the record here is clear that that is the housing that's most valuable to individuals who have been formerly incarcerated. The city's answer simply has been that appellants have not proven that city can afford that. But it's the city's burden to show that that's not a viable option, which is difficult for them to show when, again, the housing affordability and livability agenda report repeatedly throughout over and over again suggests ways to expand public housing. Counsel, I have an unrelated question. So the way I read the ordinance, I tend to agree with your friend that there is nothing in the ordinance which in dealing with Section 8 housing applies anything more that it doesn't exempt Section 8 housing from the inquiry provision. That seems to me to be the way the statute reads or the ordinance reads. Your argument is that Section 8 housing is excluded from the inquiry provision, right? Yes. And explain to me from the language of the ordinance first how you get to that. And then second, if you're looking at parole, explain that to me. Certainly, Your Honor. So the relevant exclusion is Chapter 14-09-115. Exclusion is another legal requirements, subsection B there. And it says that this chapter shall not apply to adverse action taken by landlords of federally assisted housing. Right. But adverse action doesn't include inquiry, right? So this is an issue of debate between the parties. The original frequently asked questions published by the city said that this exemption applied to the inquiry. It's been since amended. We believe that adverse action based on the city's reading could be reasonably defined to include the inquiry. But it's certainly clear from this that the exemption expressly applies to adverse action. The question then would become whether the inquiry is itself adverse action. But federally assisted housing is not defined. So the question of whether that includes Section 8 housing is going to be determined by whether subject Section 8 housing is subject to federal regulations that require denial of tenancy. And HUD regulations are clear that not only is federally assisted on-site housing included in the HUD regulations that are a condition of funding that require denial for certain criminal history, but Section 8 housing is included in that as well. So under that reading, we would understand both those types of public federally assisted housing to be within the scope of this exemption. Yes, the question of whether or not this applies to inquiry provision, the city has throughout the course of this litigation, to look back at the district court briefing is clear. The city has never defended it, never argued until the district court raised it in summary judgment order, that the exemption does not apply to the inquiry provision. They've always defended it as a legitimate exemption, even if it did apply to the inquiry provision. So our understanding has always been that's the city's reading of the ordinance until recently. And the FAQs were amended post litigation during the course of this litigation. I'd like to briefly go back to the question of whether or not the inquiry provision essentially makes it easier to enforce the conduct prohibition. First of all, there is clear evidence in the record that fair housing testing reveals discrimination. The city has relied on that testing as valid evidence that discrimination is occurring. This is done through control testing and a variety of other means that could be applied in this context as well. And the city has not argued or demonstrated that it somehow can't be done in this context either. But it's important also to note that in McCollum versus Coakley and again, and very recently in Americans for Prosperity versus Bonta, the Supreme Court has said the fact that restricting speech will make it easier to enforce some other conduct prohibition is not a good enough reason for restricting it. I think this goes back to a point made by the Supreme Court in Virginia State Board of Pharmacy, a commercial speech case, in which the court said it is precisely this kind of choice between the dangers of suppressing information and the dangers of its misuse if it is freely available that the First Amendment makes for us. So even if this were to be easier to enforce, if it was easier to prevent this kind of adverse action from occurring, should the inquiry be prohibited, we think under IMS Health and Virginia State Board of Pharmacy and similar commercial speech cases, that's not a valid reason for restricting it. Just to briefly touch on the adverse action provision, the federally assisted housing exemption that we've already touched on briefly, even if it were to apply only to adverse action, does raise a due process concern largely because the city's defended the exemption on the grounds that it's required by HUD regulations. We pointed out in our district court briefing below and again on appeal that it's actually not required by HUD regulation. HUD regulation requires that landlords of federally assisted housing reject tenants who manufactured methamphetamine or produced methamphetamine. Even if you're right on that, why wouldn't it be rational for the city to say, you know, we don't even want to step into this mess. We don't want to have lawsuits with the United States. We don't want to have these kinds of problems. Even if we're over reading the federal regulations, this makes sure we don't have this mess. Why isn't that rational? Why doesn't that serve some legitimate government objective in a non-arbitrary or irrational way? I think that if the HUD regulations lacked clarity, then perhaps there would be a different question there. But HUD regulation does two things, really. It says that this very narrow set of offenses, there has to be a rejection of an application for federally assisted housing. But then it goes on to clarify that the public housing authority has discretion to reject individuals with other types of criminal history. They're not specifically tagged as something. They have discretion to allow it or reject it at their will. So we think it's clear enough that the city would have no interest in sort of drawing a broader line around it. I don't know, counsel. I mean, I think you have an enormous mountain to climb in invalidating under a rational basis test what is essentially economic regulation. Well, Your Honor, we would submit that it is in fact burdening a fundamental property interest with the right to exclude. But in any case, landlords have a right to ask a question. They have a right to access public information that all these other entities, including the city itself, routinely rely on. Thank you, Your Honor. Thank you. Are you reserving your three minutes? I will reserve my remaining time. Thank you, Your Honor. All right. Ms. Servati, you're on video. Yes, ma'am. Good morning, and may it please the court. I am Jennifer Servati, and I'm here on behalf of the Consumer Data Industry Association and the Professional Background Screening Association. If you could, sorry, Judge Portillo. Counsel, we're having a bit of a problem hearing you. Can you turn up your volume settings? Sure. I'm also holding my microphone closer. Is this better? That is much better. Thank you, counsel. Sorry to interrupt. Of course, and thank you for letting me know. And also, I thank the court for granting leave to me to appear today on behalf of my clients, amici in this case. Housing providers owe a duty to other residents and their invitees to provide safe, habitable residences. This ordinance strips away housing providers' ability to fulfill this duty. Congress even recognized this duty to protect residents when it's engaged in the role of a housing provider, as you've discussed already with Mr. Blevins. Federal law prohibits or permits, excuse me, and even requires at times that an application be denied when certain offenses have occurred in an applicant's history. It helps no one if a housing provider has to rely on their gut or intuition or their sense of an applicant in evaluating whether an applicant poses risk to others in the community. We believe that people make better decisions with actual data collected from and available in the public record other than those hunches or feelings, which may be based on known or unknown biases. Background screening companies provide consumer reports that contain necessary information, which property owners use to fairly and objectively evaluate people who apply for jobs, credit, and housing. This information includes criminal conviction information and separately may include sex offender registration information as well as other types of information. The right to exclude others from one's property is one of the most treasured rights of property ownership, says the Supreme Court, and has been universally held to be a fundamental element of one's property rights. The right to exclude on what basis? Certainly not a discriminatory basis, but on a legally permissible basis. But what, but, but, I mean, when you say that, though, we would all agree, I think, that the the Constitution doesn't forbid discrimination laws in, in housing, but why can't the state rationally decide that it doesn't want to allow exclusion based on someone's criminal record? I, I mean, why is that not some legitimate government objective that is neither arbitrary nor irrational? Because the government would be, the government would be ignoring the facts that recidivism occurs. But, but, but, but, but the government rationally can ignore certain facts and pay attention to others under the rational basis test. I mean, hasn't the Supreme Court time and time again emphasized in rational basis review of economic regulation that if where to draw a line is open to any type of doubt, the courts are not going to step in and tell the legislature where to draw the line? Well, and respectfully, Your Honor, this case, in our view, is not one of pure economic regulation. The mere fact that a consumer reporting agency may sell this information in the form of a report to a user in and of itself does not strip away the first amendment right of the CRA to provide that, or more importantly, that's a different, that's a different, that's a different question. You, your argument just now, as I took it was going to the right to exclude, not the first amendment, right? You agree that the adverse action right to exclude provision is governed by a rational basis test, right? No, Your Honor, I would submit that this would go beyond and that like Sorrell, we are talking about at least an intermediate level of scrutiny. But again, I'm not talking about inquiry. I'm talking about the adverse action provision. I'm not sure they should be evaluated under a different approach, Your Honor. I think the ordinance as written prohibits under section A2, the inquiry and the taking of adverse action with respect to a prospective tenant based on an arrest record, conviction information, or criminal history, which is broader than just the conviction record question. The first question you asked, Mr. Blevins, would the individual landowner be allowed to go? I see my time has my thought. Yes, you may. Thank you. The landlord would not be able to go to the public courthouse and look up the criminal history information of the applicant because section A2 prevents any inquiry. Unless the panel has other questions for me, I see my time has expired. I have a question. Go ahead. Please go ahead. How many cities have fair chance ordinances like the city of Seattle? I can certainly provide you with an exact number, but I know that a number of cities across the country have adopted some form of a fair chance ordinance. However, Seattle, I believe, is one of only two that prohibits the inquiry in its entirety. Most of the others, like New York City and others, prohibit the timing of the inquiry to the initial part of the application process. Most of them require some form of an assessment of the eligibility of the applicant. Then the criminal inquiry follows as a secondary phase of the process. Has the U.S. Supreme Court opined on these fair chance ordinances at all? Not as to the constitutionality of them, Your Honor. I do not believe so. I understand that answer. You said not as to the constitutionality. Have they opined in any other way? I'm trying to remember, Your Honor. I believe that... No, I do not think so, but I can certainly check on that and update the court if my answer is incorrect. What about other intermediate courts of appeals? We have... The name, of course, is escaping me at the moment, but there is a case that went up on a preliminary injunction issuance with respect to a preliminary injunction that was issued with a similar ordinance, and that preliminary injunction was set aside, and that case is proceeding. Is that case in the case materials you cited to us? If it is not, I will supplement it to the court. Which circuit? I'm trying to... We have very skillful law clerks who can figure this out. Apologies. Excellent question. I apologize. I don't have the answer. All right. Thank you very much, counsel. Thank you so much. Do you have further judge call? No. Okay. All right. Mr. Nguyen for the City of Seattle. Thank you, Judge Wardlaw. Good morning, and may it please the court. I am Roger Nguyen for the City of Seattle. Even though the city's Fair Chance Housing Ordinance fits within a nationwide body of local laws, reducing barriers to those with a criminal history, plaintiffs and their amici think the ordinance is a bad idea, but there is no bad idea clause in the Constitution. Counsel, going to my colleague's questions, are you aware of any other ordinance, whether it's or not, that has the type of absolute inquiry bar that this one does that stops someone from going down to the Hall of Records and looking up public records on a prospective tenant, even if it's for murder or selling heroin convictions? Your Honor, I now regret I did not look up the citations from our amicus, the National Housing Justice Project. They cite to Berkeley, Oakland, and Ann Arbor, saying that they are just like the cities. I did not independently look at that. I can't say right now that I can come up with an example, although we do have in our briefing, and I would like to rely on our briefing rather than my recollection standing before you, various examples of other cases, Urbana. I could try to list some that come to mind. All right, but you, I mean, I went to the King County website and it says, the Superior Court Clerk's Office has three records access public areas offering customers the option to view court documents for free during business hours. As a landlord, if my tenant, if someone is applying to be a tenant, I can't go down to the Superior Court and ask to correct. That is correct. That would be an inquiry that is prohibited under the ordinance. Okay. Now I could, for example, ask my prospective tenant if he favored selling heroin to children, right? That's not prohibited by the ordinance. That is correct. But I couldn't ask him if he's been convicted of selling heroin to children. That is correct. I could ask him if he favors assaulting his landlords, right? Correct. But I couldn't go down. I couldn't ask him if he's ever been convicted of assaulting his landlords. That is correct. And so how is that what I'm prohibited from doing? How is that purely commercial economic type speech? I have 50 units and I'm really concerned about heroin being sold to the children who live there. And I'm asking because I don't want somebody who's been convicted of heroin living in my premises. How is my inquiry purely commercial? Well, Judge Bennett, that covers a lot of ground. Let me see if I can catch up to you. This court reminds us in Eric's that when determining whether speech is commercial, we take a fact specific common sense approach that looks at the context and the party's primary motivation for engaging in that speech. And here, we certainly have a primary motivation. Well, let's look at how that plays out in two respects. And then I would like to add the third with the courthouse example. So as to the parties before you, we have commercial speech in two ways. One, when landlords ask of a tenant about their criminal history, that is exactly what this court had in San Francisco Apartment Association, where it held that a landlord asking about the prospect of a buyout provision with a tenant was core commercial speech. Here, we have a conversation that happens at the beginning of the relationship, not at the end. And from the landlord's perspective, the landlord's commercial economic motivation is evident. But for their desire to potentially use criminal information to violate the adverse action provision, they would have no reason to inquire about that criminal history. Wouldn't you have a reason to inquire to see if the person coming is going to be a safe person or not a safe person to evaluate that? I mean, irrespective of the convictions, it would shed light on whether this is somebody who's like assaulted their last 10 landlords or even was somebody who had sold heroin at their last 10 projects. And the reason you don't want to rent to them is because you don't want people selling heroin there, not because they've been convicted of it, but because they did it. Well, Judge Bennett, that still does not make it any commercial speech. So let's say take a manufacturer with a big manufacturing plant. They will always say that safety of their workers is their paramount concern. So when that manufacturer turns to an equipment maker to potentially buy equipment for the plant, they're going to ask about the safety of those pieces of equipment. But that doesn't make that conversation or that transaction any less commercial. Clearly, the clinic that challenged the San Francisco ordinance in first resort was motivated to build an abortion-free world, but that still didn't erase the fact that they engaged in commercial speech when they spoke to their prospective clients. And in Valle del Sol, the court held that it did not matter that prospective day laborers might be motivated politically when they engage with prospective employers in their speech. And what we have here at heart in the context, again, and Eric says we have to look at the potential commercial transaction with a potential tenant and landlords can't disaggregate the speech or their motivations for that speech and lift out parts that are relevant to safety or to happiness or to anything else. I honestly don't see why when you're saying we take a look at common sense. Common sense to me is that a lot of landlords, maybe not every landlord, but a lot of landlords feel that they're in large part responsible for the safety of their tenants and they don't want their tenants murdered, raped, sold heroin to, and it's not out of an economic motivation in common sense. It's out of a caring landlord who doesn't want horrible things happening to their tenants from a prospective tenant who has a huge violent history. I'm going to have to respectfully disagree with you, Your Honor. Just like the manufacturer who asks about safety, it still doesn't make it any less in the common sense context of what we have here is a potential commercial transaction. Well, let's say I agreed with you, which I don't, but let's say hypothetically I agreed with you. Explain to me how this ordinance is not more extensive than it needs to be. Why, for example, would you need to exclude inquiry about crimes that go directly to public safety? Why couldn't you have something like you do with the sex offender part where you have, I don't know why it's defined as legitimate business reason, but whatever you call it, that same definition. Why is all inquiry okay as opposed to just the stuff that doesn't actually go to the safety of the tenants? Okay, so now we're getting into the final two prongs of central Hudson. Yes. And the Supreme Court, at least since 1989 in Board of Trustees versus Fox has held that those two final prongs require a reasonable fit between means and ends. That fit need not be perfect. It need not be the single best, and it need not be the least restrictive on speech. It just has to be proportionate to the interest served. And within those bounds, courts defer to legislative and governmental- Within those bounds. Within those bounds. Yes. So when we look at what the other alternatives are, what the court could, excuse me, what the city council could have done, we have to keep in mind that this is not an infinite number of- You mean like they did with the sex offender provision? They had many options that they could choose from. Why, by the way, I'm sort of changing tack here and I apologize for that, but in terms of under inclusiveness, why is a misdemeanor sex assault excluded but murder isn't? You can inquire about a misdemeanor sex assault if that's on the Washington registry. Thank you. But you can't inquire about murder. That was a decision that the council made based on the unique approach that Washington takes to sex offenders and the sex offender registry. Washington has a very intense manner of regulating that, and I think out of deference to that, the council decided to- I imagine Washington also has robust laws on selling heroin to children and murderers. It certainly does. But again, Your Honor, the question is whether the alternative that the council chose is proportionate, and here it is. The fit just has to be proportionate. Impacts on speech does not have to be the last resort, as my friends argue. Fox held that Central Hudson does not require elimination of all less restrictive alternatives, just a reasonable fit between the means and ends. And Discovery Network explained that whether there are numerous and obvious other less burdensome alternatives is only reasonable to the fit. There is no bright line rule here. Could there have been a greater restriction on inquiry? I suppose so, although I'm struggling to think of an example. Me too. It sounds like most of the cases we look at, the legislature has perhaps not picked something in the middle, but maybe close to the middle. It's hard for me to think of something that could possibly be more restrictive on the right of inquiry as to publicly available information than this law. Well, Your Honor, it's still the question then comes down to whether the fit is proportionate. The First Amendment does not put a it's not a limit on innovation by lawmakers. Somebody can be the first to have this. And so if this indeed is the first, then we have to ask whether the fit is proportionate. And here we believe it is. Mr. Wynn, let me interject a question if I may. So I asked the same question to your colleague earlier, and that is, has the U.S. Supreme Court said anything at all on the subject of fair housing, fair chance ordinances like Seattle's? I'm aware of no such case. If there is such a case, I would be chagrined because we were so writing on a blank slate here. This is true, Your Honor, at least directly with respect to such limitations on inquiry about criminal history. How about any other circuit court, any other circuit court issued a ruling on same answer again? If it has, I'm chagrined because we should have found it in the briefing for this case. Thank you. I'd like to turn to, actually, I'm not going to turn to the substantive due process question. I want to turn to the issue you were raising, Judge Bennett, about the federally assisted housing exemption. We maintain, as you said, that the exemption does not apply to the inquiry provision. But even if it did, in Retail Digital Network, this court said that it rendered a law irrational or so inconsistent that it lacks coherence. The Third Circuit in Greater Philadelphia Chamber added that under-inclusiveness is important only if it raises serious doubts about whether the government is, in fact, pursuing the interests it invokes rather than disfavoring a particular speaker. The federal law exemption here withstands those tests. The exception that we have here is a supremacy clause imperative. It just is out of respect for federal law. In fact, if we didn't include it expressly for the reason that you said, so we didn't have to litigate it, the same result would happen in the real world because any housing provider faced with a choice between complying with federal law and city law should choose federal law. Well, but I mean, I don't, correct me if I'm wrong, but I don't know that there's anything in federal law, whether dealing with Section 8 housing or other federally assisted housing, that deals with the question of whether a landlord can go to the House of Records and inquire. Is there? I don't know if that is so. I'm not that familiar with the federal law, but that's not my point with respect. But you were also saying even if this included the inquiry provision, I mean, I think you're, I'm not sure that it helps you to go there, but if it included the inquiry provision, this supremacy clause issue would only be relevant if there were something in the federal housing laws that protected the rights of the landlords to go to the Hall of Records, right? I agree. So again, really the exception is just out of respect for the supremacy clause, nothing more. I'd like to address plaintiff's claim that the law, that the ordinance is over-inclusive because it applies outside of the context of landlord-tenant transactions for housing. Now read in isolation, the ordinance does say no person may inquire, but we need to avoid such a formalistic ruling reading here for two reasons. First, we have to read it in context of the rest of the ordinance. Your position is basically it would be absurd to read any person to include, for example, me, that I couldn't go look up the record of somebody who's applying if I were a Washington State resident or Seattle resident to look up the criminal record of somebody who was applying to be a tenant randomly somewhere else in Seattle. Correct. And it would also be absurd to say that the Seattle Municipal Court could not inquire into the criminal history of a defendant before it. And it would also be absurd to have this provision swallow the city's other provisions that take a different approach to regulating criminal history in the context of, say, firearm sales and employment. But also we have to read it in context. And the context here is that this ordinance applies with reference only to a transaction for a specific housing unit. I'll quote, a person is covered by this chapter, this ordinance, when the physical location of the boundaries of the city, close quote. And the city, unlike other jurisdictions, has a provision in its code saying that chapter names matter for purposes of construction and interpretation. And here, this chapter is named use of screening records in housing, not in any other context. My only question for you is whether or not this ordinance is narrowly drawn enough to satisfy the it seems to me it's rather overbroad. And I think Judge Bennett has pointed out ways in which he thinks it's overbroad too. And I just would like to hear your argument on why you think this is narrowly drawn to meet the city's substantial motivations. Right. So again, the Supreme Court has held that the fit here need not be perfect. It need not. Well, I understand that. Those are just, you know, I mean, any side of an argument. So it is, let me say it this way. It is narrowly drawn. The inquiry provision works hand in glove with the adverse action provision. The landlord has. But it prohibits all inquiry. It only prohibits inquiry in the context of a transaction for a particular housing unit. Again, the ordinance says it applies only. So I'm accepting its commercial speech. I'll accept its commercial speech. Now I'm asking about the standards that we apply to commercial speech to determine whether it's constitutionally withstands constitutional challenge. Understood, Judge Portlow. But the fit here is tight. The to violate the adverse action provision. My point about the ordinance is that the ordinance is limited. It says a person is covered by this chapter only when you're saying the limit is because it relates only to commercial transactions. I'm suggesting that another limit might be to certain types of crimes. So that were related or not related to legitimate safety concerns, for example. But again, we need to defer to the governmental decision maker if it's staying within the bounds of the proportionate fit. So the fact that the city council had decided to give total deference to the state on this, of course not your honor, but we are not asking for total difference. We are saying that the decisions that the city made to exempt federal housing or to exempt. I have a problem with the federal housing one. I think that that's perfectly appropriate in the context of this, given that if the federal government has made a law affecting this, it's probably going to preempt anyway. So no problem with that. Okay. I'm just wondering about things that are tied to the landlord's legitimate safety interests. Okay. But again, you can look to our amici and our briefing as well at the vast record that the council considered in terms of the predictive value of criminal background checks when it comes to their ability to actually predict whether somebody will be violent in their housing context or whether it will be a bad tenant. And the council made a rational decision that this court should that those studies mean that it is permissible. It is within those bounds for the city, not to say you can check about heroin or not to say you can check about murder because again, the predictive value of those histories is limited. And that is a factual debate, which we don't think this court should try to resolve. If I may, I'd like to turn to plaintiff's due process argument. I don't think that argument is strong. I think you're looking at judges who are wrestling with this first amendment claim. Fair enough. Then let me add another couple of arguments to the free speech claim that I glossed over. First, we have to ask at the threshold, whether this ordinance is a speech regulation or a regulation of conduct. And we think actually, this is a regulation of conduct. Consider the Rumsfeld decision. That's the case where this U.S. Supreme court upheld a federal ban on funds going to law schools that did not provide equal access to military recruiters on campus. And Rumsfeld held that that law was a conduct regulation, even though that law necessarily meant that the law schools would have to send emails about the recruiters. Counsel, I'm sorry. Is your argument that this law is not a speech regulation saying to a tenant, for example, they can't go to the county clerk and say, let me have your records on whether prospective tenant Doe has ever been convicted of murder, that that's not a speech regulation. That's a conduct regulation. And so the first I'm not certain. Did you say that that it would prevent a tenant from going to ask? I'm sorry, a landlord from going and asking the clerk, can I have the record on prospective tenant of whether he's been convicted of murder? That's not a this is not a speech regulation that we look at the ordinance as a whole and say it is a conduct regulation. Again, I'm analogizing to Rumsfeld here. So again, in that case, it was it was a necessary implication that the law schools would have to send emails. I don't think the result of Rumsfeld will have been any different if the law there had said expressly, you have to send emails. And so what we because the court there found that the law was a this this regulation forbids me as the landlord from speaking from uttering words, but it's not a speech regulation, just like in Rumsfeld, the law school had to send emails saying it is it is speech either way. Yes. Inquiring about criminal history is speech, just like sending emails was here. I can't send an email either. I can't send an email to the clerk. I can't send smoke signals to the clerk. I can't do anything to get this information. But it's not a speech regulation. Because I'm analogizing to Rumsfeld, where it certainly had your position was that it's it's regulating commercial speech. My position is if it is speech, if it regulates speech, it is commercial speech. We also have argument that it is regulating that the ordinance as a whole is a conduct regulation, not a speech regulation. Let me let me try one other point that I glossed over in this, which is that if we get to the to the central Hudson factors, the first factor is whether the speech relates to unlawful activity. If it does, then we don't go further in the analysis. Again, here, the context matters. The adverse action provision makes it unlawful to deny tenancy on the basis of criminal history. The inquiry provision is limited to speech that could only support that unlawful activity. No, that's that's just I don't agree with you, counsel, because the speech could disclose whether someone has murdered landlords, you can you can choose to not rent to someone who's murdered landlords, you can't choose to not rent to someone who's been convicted of arrest or but Judge Bennett, the only the only speech that we are limiting is the speech that would could only be used potentially to violate the adverse action. Why? Why would I if if I knew without an inquiry that my tenant had murdered his landlord and been convicted of it, couldn't I refuse to rent with to him because he had murdered his landlord as irrespective of whether he'd been No, it's based it's based on that he murdered his land. It's based on that he took a gun and shot his landlord. Well, with respect, I would believe that would be criminal history and that an adverse action based on that criminal history would be prohibited. But my point is that the inquiry provision works hand in glove with the adverse action provision and plaintiffs concede that the only the only reason that they want this information for safety or other concerns is to different from via Del Sol where this court struck the Arizona in-street employment solicitation statute. The court there ruled that because it's legal to be hired or to hire speech about that was not unlawful. It was not related to yes. Let me just ask you a question that's so simple that I may be drummed off the bench for asking. My question is if the purpose of or not to enter a lease, does that make it commercial speech? That would certainly under the context fact specific common sense approach. Yes, because the primary motivation of both parties to that is economic. See that I've run out of time, right? I just I have a question for you. Do you just the city of two actually does the city of Seattle otherwise prohibit discrimination based on a criminal history record in housing? In housing? You have any ordinance to say a landlord cannot discriminate in renting based on a criminal history? No, I believe it's only in this ordinance. It's only this one. It's only in connection with the inquiry. Correct. I could be wrong. I'm unaware of any other. It's important to know if you also have that on the book somewhere else. And then my other question is, if this is a regulation of expressive conduct, what what standard do we apply to that? Isn't that the O'Brien case? When we apply that standard? Don't know that we have researched and briefed or personally, I've researched and make the argument that it's expressive conduct and rely on Rumsfeld, but you don't give in your brief, but you don't tell us exactly what precise standard. I think that's also intermediate scrutiny. But I think Rumsfeld held that this wasn't expressive conduct. No, Rumsfeld did hold it was conduct because the military people. I agree with you on that part. But what standard did they apply? What if it's expressive conduct, which is another area? I think that's also intermediate scrutiny, right? Because Rumsfeld held that it was not expressive conduct. I just I was analogizing to Rumsfeld, which held this was not expressive. I can see the analogy, but I do think there's an expressive component to this inquiry provision. And so it could be expressive conduct. And then I wonder if we just maybe we're not in central Hudson, but we are in an intermediate scrutiny world. Well, your honor, I'm I'm going to have to respectfully disagree that there's any expressive component of conduct when a landlord inquires about someone's criminal history. They're acting in their commercial in their commercial context and not any express in his commercial speech context is what you're saying. Correct. Solely. And there is no expressive conduct embedded in that. Okay. All right. Thank you very much, counsel. We'll hear from your honors. Just very briefly, the Eighth Circuit case that Mr. Vati referred to is a series of apartment numbers. So it's better to give the case number. It's 23, 493. And it's a municipal ordinance coming out of Minneapolis that I think is a good example of a less restrictive means and would suggest it for that reason. I also wanted to just briefly touch on the city's argument. There's no reason to ask about this information unless it were to action. And that simply isn't true. A landlord might want to ask so that they know whether or not they need to increase security on the premises by purchasing cameras by hiring more security personnel. Council with all respect there. They're not going to ask that question for purposes of spending more money on on security measures that just won't they'll just reject the application. They're not going to want to spend more money. You know, oh, yes, I want a high risk tenant who I have to take other precautions for. And I'm going to that won't cost me a lot of money. I don't think most landlords are in the business of bringing on tenants that they perceive will cost them more money. So I don't think that's correct. Okay, your honor. Well, let's imagine a world for example, where the inquiry provision does not exist, but the adverse action provision does. So now the landlords cannot reject someone. So that's, that's the world that I just asked your friend across the aisle about whether or not there was independently on the books in Seattle, a lot of prohibits discrimination against persons based on their prior criminal history. Certainly, but this ordinance does prohibit this ordinance itself does prohibit denial of tenancy based on criminal history. And unless it's not generally only in connection with the inquiry, right? No. So if if a landlord were able to ask about this information, they'd still be prohibited from using it under the direct language of the, the ordinance. But in any case, the point is, I mean, we can look for example, for the amicus Goodman real estate who had to impact of this ordinance. And one of the one of the perverse effects of the ordinance is it inoculates itself against effective criticism because landlords can't demonstrate the impact that the ordinance is having by showing for example, that individuals that they have been required to to rent to have a criminal history and have caused such and such an issue. Just to I think it's a National Association of Municipal Lawyers provides other ordinances. What's striking about those is they don't restrict asking the question what they tend to restrict is for example, you can't deny tenancy based on a risk arrest that did not result in conviction. But this ordinance goes above and beyond any ordinance we've seen around the country and prohibiting them quite the question entirely. And just I see my time has expired. Thank you. Okay. So the embers is Seattle is submitted in this court will be in recess for 10 minutes.
judges: WARDLAW, GOULD, BENNETT